USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/31/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WILLETHA RENEE RUSS,                         :
                                             :        20-CV-6389 (RWL)
                              Plaintiff,     :
                                             :
            - against -                      :
                                             :
                                             :        **DECISION AND ORDER:**
                                             :        **SOCIAL SECURITY APPEAL**
COMMISSIONER OF SOCIAL SECURITY,             :
                                             :
                              Defendant.     :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Willetha Russ, represented by counsel, commenced the instant action against Defendant Commissioner (the "Commissioner") of the Social Security Administration (the "Administration"), pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of the Commissioner's decision that Russ is not disabled and therefore not entitled to Disability Insurance Benefits ("DIB") or Supplemental Security Income benefits ("SSI"). Russ moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules Of Civil Procedure, seeking an order to remand the case for a further hearing and award attorney's fees under the Equal Access To Justice Act, 28 U.S.C. § 2412. The Commissioner cross-moves for judgment on the pleadings and asks the Court to affirm the Commissioner's decision. For the reasons explained below, Russ's motion is GRANTED, the Commissioner's motion is DENIED, and the case is REMANDED.

## BACKGROUND[1]

On May 25, 2018, Ms. Russ filed applications for disability insurance benefits and supplemental social security income for a period of disability beginning on January 31, 2018.  Ms. Russ was 45 years old at the time and had been injured in a car accident in 2016.  She claimed disability due to headaches, right shoulder pain, right knee pain, and back pain.  On August 21, 2018, the Administration denied Ms. Russ's application.  Ms. Russ then requested a hearing, which was held on August 20, 2019 before Administrative Law Judge Barry H. Best (the "ALJ").  Ms. Russ was and continues to be represented by counsel.

Ms. Russ previously worked as a homecare nursing aide and nursing assistant, which is considered medium to heavy work.  At the hearing, Ms. Russ testified that after the alleged onset of her disability she returned to work for approximately five months in 2018 but stopped because of the pain.  She tried light duty work as a hall monitor but could not continue even with that because of prolonged sitting and not being able to take pain medication on the job.  Ms. Russ has taken several medications for pain.  Percocet did not sufficiently relieve her pain, so she has been prescribed Oxycodone, which she takes every four to six hours and sometimes makes her drowsy.

The medical records are dated as early as June 15, 2016 and come from several doctors and facilities, including orthopedists and pain management specialists.  Following her accident in December 2016, Ms. Russ was treated for injuries and pain to her head,

---

[1] Both Plaintiff and Defendant provided recitations of the facts and medical record that are largely consistent with each other, although each emphasizes different facts.  The Court provides a brief summary here and assumes the parties' familiarity with the full record.

lower back, right shoulder, and right knee.  From then on, the records generally reflect that Ms. Russ experienced varying degrees of pain, often a 10 out of 10, that was ameliorated to some extent, and sometimes only intermittently, by conservative treatment, including medicine, injections, and physical therapy.  In February 2018, Ms. Russ underwent a right shoulder rotator cuff operation but continued to experience shoulder pain.  Her doctor also recommended surgery for her right knee due to lack of response to conservative treatment.  Ms. Russ did not proceed, however, because her shoulder surgery "went so poorly."  (R. 665.[2])

Throughout 2018 and up through August 2019 (the most recent medical record), Ms. Russ continued to complain of radiating lower back pain, radiating neck pain, right knee pain, and right shoulder pain, often at a level of 10 out of 10, although ranging below that to as low as 5 out of 10.  Objective assessments reflect continued tenderness in the lower back, limited range of motion in the back, an antalgic gait (i.e., limp secondary to pain), swelling and limited range of motion in the right knee, decreased range of motion in the right shoulder, and a positive Spurling's test (indicative of nerve root compression). Pain management records throughout that period indicate that pain medication generally achieved 50 percent relief, but that neck and right shoulder pain were increased by walking, prolonged sitting, standing, or other activity.

In addition to Ms. Russ, a Vocational Expert, Kenneth Smith (the "VE") testified at the hearing.  The VE testified that a person with Ms. Russ's functional capacity and characteristics would be able to perform unskilled jobs at both the light and sedentary

---

[2] "R." refers to the certified administrative record at Dkt. 15.

levels.  Jobs would not be available, however, if the individual were limited to only occasional use of her right upper extremity.

On September 30, 2019, the ALJ issued a decision finding Ms. Russ not disabled and capable of performing a range of both light and sedentary work, with certain environmental and postural limitations.[3]  The ALJ followed the required five-step sequential analysis (described below), first determining that Ms. Russ has not engaged in substantial gainful activity since January 31, 2018.  At the second step, the ALJ found that Ms. Russ had several severe impairments, including degenerative disc disease, degenerative joint disease, chronic pain syndrome, and obesity.  At the third step, the ALJ found that Ms. Russ's impairments did not meet or equal the severity of a "listed" impairment that would automatically warrant a disability determination.

The ALJ then determined Ms. Russ's residual functional capacity.  He concluded that although Ms. Russ's impairments could be expected to cause pain and other symptoms described by Ms. Russ, the record did not support the extent of pain and symptoms reported.  The ALJ found that Ms. Russ is capable of light and sedentary work, can stand/walk 6 hours in an 8-hour day and sit for 6 hours in an 8-hour workday, but cannot have any work requiring her to lift her right arm above her shoulder, and is subject to various postural limitations (e.g., occasional kneeling and crawling) and environmental limitations (e.g., no exposure to dust, smoke, or gases).

---

[3]  The May 22, 2019 decision was an "Amended Decision," reflecting that the Administration had prematurely issued an earlier decision before the administrative record had closed.  At counsel's request, the ALJ kept the hearing open to receive additional medical records through August 2019.

In making his determination, the ALJ considered the medical records, Ms. Russ's daily activities, and both Ms. Russ's and the VE's testimony.  He also considered medical opinions from two sources, Dr. Michael Rosenberg and Dr. R. Mohanty.  Neither doctor was one of Ms. Russ's treating doctors.

Dr. Rosenberg is a consulting examiner who conducted an internal examination of Ms. Russ on August 9, 2018.  Dr. Rosenberg diagnosed Ms. Russ's right shoulder, right knee, and back pain as moderate, and her neck pain as mild.  He opined that Ms. Russ was moderately restricted for heavy lifting, performing overhead activity, and activity requiring pulling, pushing, reaching, and repetitive use of the arm; moderately restricted for activities that require prolonged, uninterrupted squatting, kneeling, walking, and standing; moderately restricted for prolonged, uninterrupted bending and heavy lifting an and carrying; and mildly restricted for activities requiring twisting and turning of the cervical spine.

Dr. Mohanty did not examine Ms. Russ.  Rather, he reviewed the medical records to form his opinion, which he rendered on August 21, 2018.  Based on that paper record, he opined that Ms. Russ could occasionally lift and carry up to 20 pounds, frequently lift and carry up to 10 pounds, stand and/or walk for 6 hours in an 8-hour workday, sit (with normal breaks) for 6 hours in an 8-hour workday; that she had unlimited ability to lift and carry other than being limited in reaching overhead to her right, and that she was unlimited in several other capacities.

The ALJ found Dr. Rosenberg's opinion persuasive "as it is generally consistent with the longitudinal record."  (R. 19.)  He found Dr. Mohanty's opinion persuasive for the same reason, and because Dr. Mohanty had particular knowledge of the requisite

disability standard.  Although Dr. Mohanty rendered his opinion without the benefit of Ms. Russ's medical records from August 2018 to August 2019, the ALJ stated that that evidence did not change the persuasiveness of Dr. Mohanty's opinion and noted that Dr. Mohanty's functional assessment was consistent with Dr. Rosenberg's findings.

Twice in his decision, the ALJ mentioned the absence of a medical source opinion offered on behalf of Ms. Russ.  First, in assessing whether Ms. Russ's statements about the intensity, persistence, and limiting effects of her pain and symptoms were substantiated and concluding that there is no evidence to support Ms. Russ not being able to perform light or sedentary work.  The ALJ wrote: "The claimant's representative failed to provide a precise functional assessment, completed by a physician to support the claimant's subjective physical complaints or to contradict the findings of the State agency physician."  (R. 18.)  Then, in explaining why he found Dr. Mohanty's opinion persuasive, the ALJ commented that "[t]here is no treating opinion to corroborate the claimant's allegations or to contradict the findings of the State agency reviewing physician."  (R. 19.)

Ms. Russ appealed the ALJ's decision.  On June 15, 2020, the Appeals Council denied her request for review, thus making the ALJ's decision the final determination of the Commissioner.  Ms. Russ filed her Complaint in this action on August 13, 2020, seeking district court review pursuant to 42 U.S.C. § 405(g).  On September 2, 2021, the parties consented to the Magistrate Judge's jurisdiction for all purposes.

## APPLICABLE LAW

### A.    Standard Of Review

A United States District Court may affirm, modify, or reverse (with or without remand) a final decision of the Commissioner.   42 U.S.C. § 405(g); *Skrodzki v.*

*Commissioner Of Social Security Administration*, 693 F. App'x 29, 29 (2d Cir. 2017) (summary order). The inquiry is "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (same).

"'Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations.'" *Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (remanding for noncompliance with regulations)). Courts review de novo whether the correct legal principles were applied and whether the legal conclusions made by the ALJ were based on those principles. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (reversing where the court could not "ascertain whether [the ALJ] applied the correct legal principles … in assessing [plaintiff's] eligibility for disability benefits"); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (reversing where the Commissioner's decision "was not in conformity with the regulations promulgated under the Social Security Act"); *Thomas v. Astrue*, 674 F. Supp.2d 507, 515, 520 (S.D.N.Y. 2009) (reversing for legal error after de novo consideration).

If the reviewing court is satisfied that the ALJ applied the correct legal standards, then the court must "'conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision.'" *Brault v. Social Security Administration, Commissioner*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)); *see also Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1154 (2019) (reaffirming same standard).   "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would ***have to conclude otherwise***."   *Brault*, 683 F.3d at 448 (internal quotation marks omitted) (emphasis in original); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record."   42 U.S.C. § 423(d)(5)(B).   The Act requires the ALJ to set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based."  42 U.S.C. § 405(b)(1).  While the ALJ's decision need not "mention[ ] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "'reconcile explicitly every conflicting shred of medical testimony,'" *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability.   *See Ericksson v. Commissioner Of Social Security*, 557 F.3d 79, 82-84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler*, 546 F.3d at 268-69 (overlooking and mischaracterizing evidence); *Ruiz v. Barnhart*, No. 01-CV-1120, 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence).

Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60,

62 (2d Cir. 1982).  The court must afford the Commissioner's determination considerable deference and "may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (quoting *Valente v. Secretary Of Health And Human Services*, 733 F.2d 1037, 1041 (2d Cir. 1984)); *Dunston v. Commissioner of Social Security,* No. 14-CV-3859, 2015 WL 54169, at *4 (S.D.N.Y. Jan. 5, 2015) (same) (quoting *Jones*, 949 F.2d at 59), *R. & R. adopted*, 2015 WL 1514837 (S.D.N.Y. April 2, 2015).  Accordingly, if a court finds that there is substantial evidence supporting the Commissioner's decision, the court must uphold the decision, even if there is also substantial evidence for the claimant's position.  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The court, however, will not defer to the Commissioner's determination if it is "the product of legal error."  *Dunston*, 2015 WL 54169 at *4 (internal quotation marks omitted) (citing, *inter alia*, *Douglass*, 496 F. App'x at 156; *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)).

## B.    Legal Principles Applicable To Disability Determinations

Under the Act, a person meeting certain requirements and considered to have a "disability" is entitled to disability benefits.  42 U.S.C. § 423(a)(1).  The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether an individual is disabled and therefore entitled to disability benefits, the Commissioner conducts a five-step inquiry.  20 C.F.R. § 416.920.[4]  First, the Commissioner must determine whether the claimant is currently engaged in any substantial gainful activity.  20 C.F.R. § 416.920(4)(i), (b).  If so, the claimant is not eligible for benefits and the inquiry ceases.

If the claimant is not engaged in any such activity, the Commissioner proceeds to the second step and must determine whether the claimant has a "severe impairment," which is an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 416.920(4)(ii), (c).  If the claimant does not have an impairment or combination of impairments that are "severe," the claimant is not entitled to benefits and the inquiry ends.

If the claimant has a severe impairment or combination of impairments, the Commissioner continues to step three and must determine whether the impairment or combinations of impairments is, or medically equals, one of those included in the "Listings" of the regulations contained at 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the claimant's impairment or impairments meet or medically equal one of those listings,

---

[4] Most of the regulatory provisions cited throughout this opinion are to those for SSI.  The regulations for DIB are virtually identical and do not differ materially for purposes of the instant analysis.  *See* 20 C.F.R. § 404.1, et seq.

the Commissioner will presume the claimant to be disabled, and the claimant will be eligible for benefits.  20 C.F.R. § 416.920(4)(iii), (d).

If the claimant does not meet the criteria for being presumed disabled, the Commissioner continues to step four and must assess the claimant's residual functional capacity ("RFC"), which is the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her impairments.  The Commissioner then determines whether the claimant possesses the RFC to perform the claimant's past work. 20 C.F.R. § 416.920(4)(iv), (f), (h).  If so, the claimant is not eligible for benefits and the inquiry stops.

If the claimant is not capable of performing prior work, the Commissioner must continue to step five and determine whether the claimant is capable of performing other available work.  20 C.F.R. § 416.920(4)(v), (g), (h).  If the claimant, as limited by her RFC, can perform other available work, the claimant is not entitled to benefits.  20 C.F.R. § 416.920(a)(4)(iv), (v).  The claimant bears the burden of proof for the first four steps. *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).  Once the claimant has established that she is unable to perform her past work, however, the Commissioner bears the burden of showing at the fifth step that "there is other gainful work in the national economy which the claimant could perform."  *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998).

## C.   Evaluation of Medical Opinion Evidence

ALJs must consider medical opinion evidence of record.  *Rodriguez v. Colvin*, No. 12-CV-3931, 2014 WL 5038410, at *17 (S.D.N.Y. Sept. 29, 2014).  Until recently, regulations required application of the so-called "treating physician rule" pursuant to which the opinion of a claimant's treating physician presumptively was entitled to "controlling weight."  20 C.F.R. § 416.927(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d

Cir. 2008).   For claims filed prior to March 27, 2017, if the ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ must determine how much weight, if any, to give that opinion.  *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019). In doing so, the ALJ must "explicitly consider" the following, non-exclusive "*Burgess* factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  *Selian*, 708 F.3d at 418 (citing *Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))).   While failure to explicitly apply the *Burgess* factors is a procedural error, a reviewing court will not reverse the Commissioner's decision when the Commissioner has given "good reasons" for its weight assignment.   *Estrella*, 925 F.3d at 96.   With respect to assigning weight to the opinions of non-treating physicians, an ALJ applying the earlier regulations must consider the same factors evaluated when the ALJ does not give controlling weight to a treating physician.  20 C.F.R. § 416.927(c).

For claims filed on or after March 27, 2017, the new regulations promulgated in 20 C.F.R. § 416.920c apply.   Under the new regulations, a treating doctor's opinion is no longer entitled to a presumption of controlling weight.   Instead, all medical opinions must be assessed for persuasiveness under the same standard of supportability and consistency with no presumption that one opinion carries more weight than another.  20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) … including those from your medical sources").

The new regulations give most importance to two of the same factors previously considered to determine whether a treating doctor's opinion should be given controlling weight, i.e., the extent to which a treating physician's opinion is supported by well-accepted medical evidence and not inconsistent with the rest of the record.  20 C.F.R. § 416.920c(a) ("The most important factors we consider when we evaluate the persuasiveness of medical opinions … are supportability … and consistency").  In most instances, the ALJ may, but is not required to, discuss the other factors previously required to assess medical opinion evidence (i.e., relationship with the claimant, specialization, and other relevant factors).  20 C.F.R. § 416.920c(b)(2).  The ALJ must consider those additional factors if there are "two or more medical opinions or prior administrative medical findings about the same issue [that] are both equally well-supported … and consistent with the record … but are not exactly the same.".["5] 20 C.F.R. § 416.920c(b)(3).

An ALJ must not only consider supportability and consistency in evaluating medical source opinions but also must explain the analysis of those factors in the decision.  20

[5] More specifically, if medical opinions on the same issue are equally well-supported and consistent with the record but are not identical, the ALJ must "articulate how [he] considered the other most persuasive factors."  20 C.F.R. § 416.920c(b)(3).  Of the remaining factors, the third is the relationship with the claimant, for which the ALJ must consider the (1) length of the treatment relationship, (2) frequency of examinations, (3) purpose of the treatment relationship, (4) extent of the treatment relationship, and (5) examining relationship.  *See* 20 C.F.R. § 416.920c(c)(3).  The fourth factor – specialization – requires the ALJ to account for whether the medical opinion is provided by a specialist that has expertise in the area related to the medical issue.  *See* 20 C.F.R. § 416.920c(c)(4)   Lastly, the fifth factor is a catchall, which accounts for "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  That "includes, but is not limited to, evidence showing a medical source has familiarity with other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements."  20 C.F.R. § 416.920c(c)(5).

C.F.R. § 416.920c(b)(2); *Vellone v. Saul*, No. 20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *R. & R. adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) ("in cases where the new regulations apply, an ALJ *must* explain his/her approach with respect to the first two factors when considering a medical opinion") (emphasis in original).  As noted in the Administration's revisions to the regulations, "the articulation requirements in [the] final rules" are intended to "allow a … reviewing court to trace the path of an adjudicator's reasoning …."  Revisions To Rules Regarding The Evaluation Of Medical Evidence, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017); *see also Amber v. Saul*, No. 20-CV-490, 2021 WL 2076219, at *4 (N.D.N.Y. Feb. 24, 2021) ("Although the new regulations eliminate the perceived hierarchy of medical sources … the ALJ must still 'articulate how [he or she] considered the medical opinions' and 'how persuasive [he or she] find[s] all of the medical opinions'") (alterations in original) (quoting 20 C.F.R. § 416.920c(a),(b)(1)).

Under the previous regulations, an ALJ's failure to consider the factors prescribed by the treating physician rule was grounds for remand.  Similarly, under the current regulations, an ALJ's failure to properly consider and apply the requisite factors is grounds for remand.  *See, e.g.*, *Rivera v. Commissioner Of Social Security*, No. 19-CV-4630, 2020 WL 8167136, at *22 (S.D.N.Y. Dec. 30, 2020), *R. & R. adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (remanding so that ALJ may "reevaluate the persuasiveness assigned to the opinion evidence of record and explicitly discuss both the supportability and the consistency of the consulting examiners' opinions"); *Andrew G. v. Commissioner Of Social Security*, No. 19-CV-942, 2020 WL 5848776, at *6-9 (N.D.N.Y. Oct. 1, 2020) (remanding due to ALJ's failure to adequately explain the supportability or consistency

factors that led her to her decision).  As Ms. Russ's application post-dates March 27, 2017, the Court applies the revised regulations applicable to evaluation of medical opinions.

Other legal principles relevant to the Court's decision will be discussed below.

## DISCUSSION

Ms. Russ advances three reasons why the ALJ's decision should be rejected. First, she contends that the ALJ did not attempt to obtain a functional assessment from one of Ms. Russ's treating doctors and thereby erred by failing to sufficiently develop the record.  Second, she argues that the ALJ's RFC determination was not supported by substantial evidence.  Third, she asserts that the ALJ's determination that she could perform light and sedentary work is not supported by substantial evidence and that the VE's testimony of what jobs could be performed by Ms. Russ was based on obsolete data.  The Court agrees that the ALJ erred in failing to seek an opinion from one of Ms. Russ's treating doctors, particularly her pain management doctor from August 2018 to August 2019 – a time period for which no doctor offered any opinion.  That error warrants remand.  As consideration of a treating doctor's opinion on remand likely would affect the remaining inquiries, including determination of Ms. Russ's RFC, the Court does not reach those issues.

## A.    The ALJ Failed To Adequately Develop The Record

"Before determining whether the Commissioner's conclusions are supported by substantial evidence," a court "must first be satisfied that the claimant has had a full hearing under the … regulations and in accordance with the beneficent purposes of the [Social Security] Act."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations in original) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Whether an ALJ has

satisfied his or her duty to develop the administrative record is a threshold question. *See Campbell v. Commissioner of Social Sec*urity, No. 19-CV-4516, 2020 WL 4581776, at *14 (S.D.N.Y. Aug. 10, 2020) ("Before determining whether the Commissioner's final decision is supported by substantial evidence … the court must first be satisfied that the ALJ … completely developed the administrative record") (internal quotations marks omitted); *Sanchez v. Saul*, No. 18-CV-12102, 2020 WL 2951884, at *23 (S.D.N.Y. Jan. 13, 2020) ("As a threshold matter, … this Court must independently consider the question of whether the ALJ failed to satisfy his duty to develop the Record."), *R. & R. adopted*, 2020 WL 1330215 (S.D.N.Y. March 23, 2020). Here, the ALJ failed to fulfill his obligation to sufficiently develop the record. Although the ALJ had the benefit of opinions from a consulting examining doctor and a non-examining consulting doctor, neither reviewed Ms. Russ's records for all of August 2018 to August 2019; nor did either of them examine her at any time during that period. The ALJ essentially brushed aside the records from that period and improperly substituted his opinion for that of a medical professional.

### 1.   Duty To Develop The Record

"Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). An ALJ must therefore "investigate the facts and develop the arguments both for and against granting benefits," *id.* at 111, and has "regulatory obligations to develop a complete medical record before making a disability determination." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *see* 20 C.F.R. § 416.912(b)(1). That obligation results from the non-adversarial nature of the instant proceedings and exists "even when … the claimant is represented by counsel." *Pratts*, 94 F.3d at 37; *see also Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing

on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record").

Prior to elimination of the treating physician rule, as part of their duty to develop the record, ALJs were required to obtain an opinion from the claimant's treating physician, and courts frequently remanded cases where ALJs failed to do so.  *See, e.g.*, *Hooper v. Colvin*, 199 F. Supp.3d 796, 815 (S.D.N.Y. 2016) ("[R]ather than obtain a consultative examination or seek comprehensive medical opinions from the treating physicians, the ALJ made Hooper's disability determination based on a record devoid of any truly complete medical opinion. This constituted an error that requires remand."); *Vera v. Barnhart*, No, 04-CV-7764, 2007 WL 756577, at *10 (S.D.N.Y. March 13, 2007) (remanding because the "ALJ had a clear duty to seek an opinion from [claimant's treating physician] regarding the existence, the nature, and the severity of the plaintiff's claimed disability" but did not).

An ALJ's failure to obtain a treating source opinion did not, however, necessarily require remand.  *See Swiantek v. Commissioner Of Social Security*, 588 F. App'x 82, 84 (2d Cir. 2015) ("the absence of a medical source statement from claimant's treating physician [is not always] fatal to the ALJ's determination").  As the Second Circuit explained, an ALJ's failure to request medical source opinions is not per se a basis for remand where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Commissioner Of Social Security*, 521 Fed. App'x 29, 34 (2d Cir. 2013).  The need for a medical source statement from the treating physician hinged "on [the] circumstances of the particular case, the comprehensiveness of the administrative record, and, at core, whether an ALJ could

reach an informed decision based on the record." *Sanchez v. Colvin*, No. 13-CV-6303, 2015 WL 736102, at *5 (S.D.N.Y. Feb. 20, 2015) (citing *Tankisi*, 521 Fed. App'x at 33-34).

Although the treating physician rule has been abolished, the principle espoused by *Tankisi* still applies: whether remand is required because of failure to obtain an opinion from the claimant's treating physician depends on whether the ALJ could have reached an informed decision based on substantial evidence without it. *See Prieto v. Commissioner Of Social Security*, No. 20-CV-3941, 2021 WL 3475625, at *11 (S.D.N.Y. Aug. 6, 2021) (remanding where ALJ failed to make requisite follow-up attempt to obtain medical opinions from either of claimant's treating physicians); *Angelica M. v. Saul*, No. 3:20-CV0727, 2021 WL 2947679, at *9 (D. Conn. July 13, 2021) (remanding and directing ALJ to seek updated medical source statement from treating therapist and treating physician); *Manzella v. Commissioner Of Social Security*, No. 20-CV-3765, 2021 WL 5910648, at *14-16 (S.D.N.Y. Oct. 27, 2021) (recognizing continued force of *Tankisi* but remanding, among other reasons, because record was not sufficient without medical source statements from claimant's treating physicians), R&R adopted, 2021 WL 2021 5493186 (S.D.N.Y. Nov. 22, 2021); *Brian Z. v. Commissioner Of Social Security*, No. 5:20-CV 737, 2021 WL 3553535, at *9-10 (N.D.N.Y. Aug. 11, 2021) (ALJ was not required to further develop record by contacting treating sources for medical source statement because medical records, plaintiff's testimony, and persuasive opinion evidence provided substantial evidence for RFC determination).

As discussed next, the Court concludes here that the ALJ did not have a sufficient record on which to make his determination and that remand is warranted.

### 2.   Remand Is Warranted In This Case

As noted above, Dr. Mohanty – the non-examining consulting doctor – rendered his opinion on August 21, 2018.  Dr. Mohanty thus could not have and did not review any of Ms. Russ's medical records after that date.  That means he did not review Ms. Russ's records for the entire time period between August 21, 2018 and when the ALJ rendered his decision on September 30, 2019.  In that period, Ms. Russ regularly saw her pain management treaters, Dr. Mohammad Islam and Nurse Practitioner Alice Looney.  There are records from at least fourteen visits during that period.  None of those were taken into account when Dr. Mohanty gave his functional assessment of Ms. Russ.  Similarly, Dr. Rosenberg, examined Ms. Russ on August 9, 2018, more than a year before the ALJ rendered his decision and without any longitudinal assessment.

The ALJ thus had no opinion from any medical source, treating or otherwise, as to the significance of the additional records or their implication for Ms. Russ's functional abilities.  Yet, those records suggest chronic pain in multiple parts of the body of a varying but generally high degree.  *E.g.,* R. 657 (lower back pain of 10/10 on Sept. 13, 2018); R. 649-52 (both right shoulder pain and lower back pain of 10/10 on October 11, 2018); R. 641 (lower back, right knee, and shoulder pain of 8/10 on December 10, 2018); R. 636 (lower back pain of 10/10 and right knee and right shoulder pain of 8/10 on Jan. 7, 2019); R. 631 (lower back, right knee, and right shoulder pain of 5/10 on Feb. 4, 2019); R. 627 (neck and right shoulder pain of 9/10 on March 7, 2019); R. 623 (neck and right shoulder pain of 9/10 on April 4, 2019); R. 619 (neck, right upper extremity, and right knee pain of 7/10 on May 30, 2019); R. 615 (neck and right knee pain of 6/10 on June 27, 2019); R. 610 (neck, right upper extremity, and right knee pain of 6/10 on July 25, 2019); R. 604 (right knee pain of 10/10 and right upper extremity pain of 5/10 on August 22, 2019).

Notably, in almost every instance, the records reflect that Ms. Russ's pain was exacerbated by basic activity, whether walking, sitting, or standing.

The ALJ nevertheless concluded that none of those materials "warrant a change in the pertinent findings of Dr. Mohanty."  (R. 19.)  But the ALJ had no medical opinion before him to support that statement and instead impermissibly substituted his own medical opinion – exactly what he was not entitled to do.

In the absence of a medical opinion to support an ALJ's finding as to a claimant's ability to perform a certain level of work, "it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."  *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (internal quotation marks omitted); *see also Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (an "ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion") (internal citations omitted);  *Hilsdorf v. Commissioner Of Social Security*, 724 F. Supp.2d 330, 347 (E.D.N.Y. 2010) ("an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substitute his own opinion for that of a physician, and has committed legal error").  Put another way, "ALJs may not, of course 'play doctor' by using their own lay opinions to fill evidentiary gaps in the record."  *Manzella*, 2021 WL 5910648 at *14 (internal quotation marks and citations omitted).  With respect to the August 2018 to August 2019 medical records and Dr. Mohanty, the ALJ did just that.  Worse, the ALJ did not even set forth any reason or support for that medical conclusion.  It certainly is possible that a physician, treating or not, may have come to a similar conclusion as Dr. Mohanty based on a review of the complete record.  But with an insufficiently developed record, that is pure speculation.

The post-August 2018 records also contain repeatedly vague references that beg explanation.  For instance, each of the reports contains a "Functionality Assessment," the categories of which are far too broad to offer any insight or basis for determining Ms. Russ's RFC.  For example, one category is "Physical functioning;" another is "Overall functioning"; others include, "Family relationships," "Social relationships," "Mood," and "Sleep patterns."  (*E.g.*, R. 607.)  But there is no further breakdown to indicate functioning of particular extremities, movements, or otherwise.  Moreover, the column to be filled in for each generalized area of functioning is titled "Medication management."  In most every instance, the designated assessment is "BETTER."  That of course is a relative term and says nothing about whether Ms. Russ functions at levels required of any particular level of work.  The last row in the chart is designated "% of pain relief."  The percentage indicated for each of Ms. Russ's visits is 50% in almost every instance is.  While the percentage appears to be an assessment of the reduction in pain achieved by the particular pain management regimen, no medical source interpreted how it relates to Ms. Russ's functional capabilities or the credibility of her reporting of the intensity and persistence of her pain.  The ALJ thus had ample reason to seek an informed medical opinion of the import of the records rather than improperly making that determination himself.

The ALJ's error is further underscored by his express references to the absence of any detailed functional assessment from doctors other than the consulting examiner and reviewer:  "There is no treating opinion to corroborate the claimant's allegations or to contradict the findings of the State agency reviewing physician."  (R. 19.)  And even though it is the ALJ's duty to develop the record, the ALJ explicitly faulted claimant

(specifically her representative) for having "failed to provide a precise functional assessment completed by a physician to support the claimant's subjective physical complaints or to contradict the findings of the State agency physician." (R. 18.)

Other courts have remanded in similar circumstances. *See*, *e.g.*, *Manzella*, 2021 WL 5910648 at *16 ("The ALJ's error is exacerbated by his finding that 'the record [did] not contain any non-conclusory opinions' from any of [claimant]'s treating or examining opinions indicating that he was disabled. … Implicit in this finding is that gaps existed in the record that the ALJ did not fill."); *Blair v. Colvin*, No. 16-CV-5983, 2017 WL 4339481, at *5 (S.D.N.Y. May 15, 2017), R&R adopted, 2017 WL 4342123 (S.D.N.Y. Sept. 27, 2017). As the court in *Blair* explained:

> It is fundamentally unfair for the ALJ not to develop the record by obtaining treating sources' opinions while at the same time basing his disability determination, inter alia, on the ground that 'the record does not contain any non-conclusory opinions, supported by clinical or laboratory evidence, from treating or examining physicians indicating that the claimant is currently disabled.' The ALJ's failure to develop the record is an error of law warranting remand.

To be sure, the record in the instant case includes opinions of both an examining consulting physician, Dr. Rosenberg, and a non-examining consultant doctor, Dr. Mohanty. But the principle is the same; it is "fundamentally unfair" for the ALJ to rely on the absence of an opinion contradicting the consulting doctors or supporting Ms. Russ's complaints while substituting his own opinion with respect to a significant and lengthy period of the medical record on which no doctor opined. The Commissioner thus misses

the point in arguing that the ALJ did not "state or imply that the record provided an insufficient basis on which to assess Plaintiff's RFC."[6]  (Def. Mem. at 14.[7])

In sum, the ALJ's error requires remand.  On remand, the ALJ should attempt to obtain a functional assessment from Ms. Russ's treating pain-management professionals that takes into account the medical records post-dating the opinion of Dr. Mohanty.

**B.    RFC Determination**

Ms. Russ also claims that the ALJ's determination of her RFC is not supported by substantial evidence.  The ALJ's determination of Ms. Russ's RFC turns in part on the ALJ's consideration of the medical source opinions.  Inasmuch as the Court is ordering remand to give the ALJ an opportunity to obtain an opinion from Ms. Russ's treating pain management doctor, the ALJ will need to reassess Ms. Russ's RFC in light of newly obtained evidence.  Accordingly, the Court declines to rule on the RFC issue at this juncture.  *See, e.g., Manzella*, 2021 WL 5910648 at *16 (declining to reach RFC determination because evidence, including opinions from claimant's treating physicians, were "integral to the ALJ's determination of the RFC"); *Merriman v. Commissioner Of Social Security*, No. 14-CV-3510, 2015 WL 5472934, at *24 (S.D.N.Y. Sept. 17, 2015) (court could not "meaningfully review the ALJ's RFC analysis … in light of the antecedent errors").

---

[6] Similarly, the Commissioner's reliance on the ALJ's having developed "a longitudinal picture of Plaintiff's conditions" means little when no medical professional reviewed a good deal of that period.  (*See* Def. Mem. at 12.)  The Court agrees with the Commissioner, however, that a medical source statement was not required for the purposes of establishing a disability onset date.  (*See* Def. Mem. at 14.)

[7] "Def. Mem" refers to the Memorandum Of Law In Support Of The Commissioner's Motion For Judgment On The Pleadings at Dkt. 27.

**C.      Ability To Perform Light Or Sedentary Work**

For the same reason that the Court does not reach the issue of Ms. Russ's RFC, it also does not reach the issue of whether the ALJ's conclusion that Ms. Russ could perform light or sedentary work was supported by substantial evidence.  That question too depends on evaluation of the medical opinions and the new evidence to be obtained on remand.

The Court does, however, address one argument made by Ms. Russ.  She asserts that remand is warranted because the source of information about available jobs relied upon by the VE, the Dictionary of Occupational Titles ("DOT"), "is outdated and unreliable."  (Pl. Mem. at 22.[8])  Ms. Russ points to job requirement data from another data source, the Occupational Information Network ("O*NET"), that she contends is more up to date and reliable.  The Court is not unsympathetic to that argument.  The job data relied on in disability proceedings may indeed be stale.[9]

But the regulations specifically contemplate the Administration's reliance on the DOT, as well as other sources, and do not mention O*NET.  20 C.F.R. § 416.996(d) ("we will take administrative notice of reliable job information available from various governmental and other publications.  For example, we will take notice of—(1) Dictionary of Occupational Titles, published by the Department of Labor; (2) County Business Patterns, published by the Bureau of the Census; (3) Census Reports, also published by the Bureau of the Census; (4) Occupational Analyses prepared for the Social Security

---

[8] "Pl. Mem." refers to the Memorandum Of Law In Support Of Plaintiff's Motion For Remand For Further Administrative Proceedings at Dkt. 20.

[9] As Plaintiff explains, the job descriptions and their requirements relied upon by the VE were last updated in the 1970s and 1980s.

Administration by various State employment agencies; and (5) Occupational Outlook Handbook, published by the Bureau of Labor Statistics."); *see Jones v. Berryhill*, No., 18-CV-11233, 2020 WL 1516216, at *5 (S.D.N.Y. Feb. 19, 2020) (noting absence of binding authority requiring ALJ to rely on information contained in O*NET and finding claimant's reliance on it to be "misplaced"), R & R adopted, 2020 WL 1503507 (S.D.N.Y. March 30, 2020).  According to Ms. Russ, the Administration already is moving towards replacing the DOT with a new Occupational Informational System incorporating data from O*NET. (Pl. Mem. at 22-23.)  Whether and to what extent it does so remains to be seen.

## CONCLUSION

For the reasons stated above, pursuant to sentence four of 42 U.S.C. § 405(g), Ms. Russ's motion is GRANTED, the Commissioner's motion is DENIED, and the case shall be remanded for determination consistent with the foregoing discussion.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: January 31, 2022
       New York, New York

Copies transmitted on this date to all counsel of record.